UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON BARRINO,<br><br>             Plaintiff,<br><br>       v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>             Defendant. | No.  2:15-cv-1841 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion and lay evidence constituted error. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

In March of 2014, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on August 18,

---

[1]  Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 7 & 10.)

1

2011.  (Transcript ("Tr.") at 22, 244-50.)  Plaintiff's application was denied initially, (id. at 189-93), and upon reconsideration.  (Id. at 198-203.)  Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 2, 2014.  (Id. at 92-152.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 93-94.)

In a decision issued on January 9, 2015, the ALJ found that plaintiff was not disabled.  (Id. at 42.)   The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since August 18, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: cervical spine degenerative disc disease post fusion surgery (9/2013); left shoulder impingement and rotator cuff tendinitis; right knee chrondromalacia of patella post-surgery (7/2014); depression; anxiety; and attention deficit disorder of childhood (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally overhead reach with the left arm; can occasionally balance, bend, climb ramps and stairs, crawl, crouch, kneel and stoop, but never climb ladders, ropes or scaffolds; can only perform simple repetitive tasks with occasional superficial interaction, that does not require significant close coordinated interactions, with the public; and she can frequently interact and relate appropriately to supervisors and co-workers.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on January 6, 1972 and was 39 years old, which is defined as a younger age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

////

      9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

      11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2011, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 24-41.)

On June 26, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's January 9, 2015 decision. (Id. at 1-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 1, 2015. (ECF. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

3

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

APPLICATION

In her pending motion plaintiff argues that the ALJ committed the following two principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of the subjective testimony constituted error.[2] (Pl.'s MSJ (ECF No. 17) at 24-39.[3])

**I.    Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion

---

[2] Although plaintiff's motion purports to raise seven discrete claims, six of those claims concern the ALJ's treatment of the medical opinion evidence.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A.    Dr. Biju Varughese

The ALJ's decision acknowledged that in August of 2014, Dr. Varughese, a treating physician, opined in relevant:

> . . . that sedentary repetitive motion activities such as computer typing, answering telephones, writing cannot be completed through an eight hour day even with appropriate breaks; and significant walking cannot be completed at this time due to right knee surgery.

(Tr. at 37.) The ALJ's decision also stated that Dr. Varughese completed a medical source statement, opining, in relevant part, that plaintiff

> . . . due to patellar chondromalacia, cervical neuritis, lumbar degenerative joint disease, carpal tunnel syndrome and bipolar disorder can only stand, walk or sit for thirty minutes of an eight hour day; cannot sit at a computer with her neck flexed more than fifteen minutes at a time; cannot keyboard more than ten minutes at a time; can lift and carry five pounds frequently and less than ten pounds occasionally; and can reach, handle, finger and feel 5-20% of the working day or at one time, 2-10 minutes at a time; and can do no push/pull actions.

5

(Id. at 37-38.)

The ALJ's decision, however, afforded Dr. Varughese's opinions "little weight." (Id. at 38.) In support of this decision, the ALJ asserted that Dr. Varughese's opinions were "based on limited objective observations of the claimant," and were "inconsistent with the record," which demonstrated "few recurring and significant findings upon physical exam or few significant findings in the medical testing and imagery, her limited symptoms prior to surgical interventions," and plaintiff's "good recovery thereafter . . . ." (Id. at 38.)

There can be no disputing, however, that Dr. Varughese was plaintiff's treating physician. The ALJ's decision cites to numerous occasions, over the span of three years, on which Dr. Varughese treated plaintiff.[4] (Id.) See, e.g., Le v. Astrue, 529 F.3d 1200, 1201 (9th Cir. 2008) (treating physician despite only five visits over three years); Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (treating physician despite only two visits over 14 months).

Moreover, the ALJ's assertion that Dr. Varughese's opinions were "inconsistent with the record," the "few significant findings in the medical testing and imagery," and appeared "to be primarily based on the claimant's report," is belied by the record. (Tr. at 38.) In this regard, an August 3, 2012, "follow up neck pain/CT scan results," treatment note reflected that plaintiff had "severe cervical stenosis," with "only about 5 mm" of space available for her spinal cord. (Id. at 607.) Plaintiff had "anterior compression secondary ossification of the posterior longitudinal ligament as well as disc osteophyte complex." (Id.)

A September 17, 2013 CT scan of plaintiff's spine revealed a "central disc protrusion/herniation which begins at the C4-5 level," "peripheral rim of calcification which begins at the C5 level and extends to the C6 level," and "disc space narrowing, osseous

---

[4] Moreover, on May 1, 2015, Dr. Varughese submitted a letter stating that plaintiff's HMO insurance required her to see him prior to being referred to a specialist, and that Dr. Varughese's opinion was also "based on a thorough review of [plaintiff's] medical records and chart notes from her specialists." (Tr. at 1571.) Although Dr. Varughese's letter was submitted after the ALJ's January 9, 2015 decision, it was considered by the Appeal Council. (Tr. at 5.) "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

1  remodeling of the end plate and anterior osteophyte formation at the C5-6 level." (Id. at 717.)
2  On September 20, 2013, plaintiff underwent a cervical discectomy and instrumented fusion. (Id.
3  at 455.)

4  On December 11, 2013, plaintiff was diagnosed as suffering from bipolar disorder and
5  was proscribed lithium. (Id. at 1146.) On January 24, 2014, it was noted that plaintiff had severe
6  depressive disorder and was evaluated for Transcranial Magnetic Stimulation. (Id. at 1140.) A
7  February 20, 2014 MRI confirmed an "osteochondral defect of the medial femoral condyle,"
8  fissuring, and "associated patellofemoral chondromalacia," of plaintiff's right knee. (Id. at 707.)
9  On July 28, 2014, plaintiff underwent a right knee osteochondral allograft implantation of medial
10 femoral condyle. (Id. at 1471.)

11 Finally, the ALJ rejected Dr. Varughese's opinions due to plaintiff's "rather ordinary
12 range of activities of daily living" discussed elsewhere in the opinion. (Id. at 38.) This vague and
13 conclusory assertion, however, does not allow the court to evaluate the ALJ's finding with any
14 specificity. See generally Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has
15 repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does
16 not in any way detract from her credibility as to her overall disability."); Reddick v. Chater, 157
17 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized for attempting to lead
18 normal lives in the face of their limitations"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir.
19 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all
20 forms of human and social activity.").

21 For the reasons stated above, the court finds that the ALJ failed to provide specific and
22 legitimate reasons supported by substantial evidence in the record for rejecting Dr. Varughese's
23 opinions.

24 ////
25 ////
26 ////
27 ////
28 ////

**B.      Dr. Samuel Hu**

The ALJ's decision discussed Dr. Hu's opinion, stating:

> In July 2014 treating source orthopedist Dr. Samual Hu opined the claimant due to left should pain cannot lift more than ten pounds with the left arm/shoulder, that she could reach/grasp, handle, feel, and perform fine finger manipulations 100% of a working day or eight hours of a working day but for push/pull which she can perform only 10% or 30 minutes of a working day.

(Tr. at 35.) The ALJ, however, afforded "[l]ittle weight" to Dr. Hu's opinion that plaintiff could "push/pull only 10% or 30 minutes of a working day." (Id. at 36.) In this regard, the ALJ found that objective findings and medical imagery showed "no significant findings limiting the operation of both left and right arms . . . ." (Id.)

Plaintiff argues that Dr. Hu's opinion was supported by evidence in the record, specifically, positive impingement signs, reduced range of motion of plaintiff's left shoulder, and an MRI. (Pl.'s MSJ (ECF No. 17) at 31.) However, the evidence cited to by plaintiff supports the ALJ's finding.

In this regard, plaintiff cites to a February 4, 2014 treatment note. But that note reflects that plaintiff felt that her symptoms were "relatively minor" and elected to continue "conservative management." (Tr. at 476.) Plaintiff also cites to a May 22, 2013 MRI which revealed essentially "mild" findings, "[n]o evidence of rotator cuff tear," or of "acute labral injury." (Id. at 721.) Finally, plaintiff cites to an October 6, 2014 therapy note, reflecting that plaintiff had "limited left should abduction." (Tr. at 1552.) But that finding was generated after Dr. Hu rendered his opinion, and also shows that plaintiff's right shoulder displayed greater range of motion. An ALJ may validly reject a treating physician's medical opinion that is inconsistent with the physician's own treatment records and lacks support by objective evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

Accordingly, the court finds that the ALJ provided a specific and legitimate reason supported by substantial evidence in the record for rejecting Dr. Hu's opinion.

////

C. **Dr. Heather Hull & Dr. Tiffany Mimms**[5]

The ALJ's decision discussed the opinions of these two physicians together, stating:

> In July 2014 treating source psychiatrist Dr. Heather Hull opined the claimant due to extreme irritability has a very difficult time interacting with supervisors, co-workers; that her attention span and ability to concentrate are very low; that her ability to understand, remember and carry out simple repetitive tasks is limited to very short periods of time; that she is too irritable, her mood too unstable to deal with the public; that her illness directly limits her concentration and attention, making her very distractible regarding her capacity to sustain attention and concentration for two hour increments; and that her frustration tolerance is very low due to intrusive thoughts and anxiety affecting her ability to withstand the stress and pressures associated with an eight hour work day, and day to day work activity. In August 2014 treating source psychologist Dr. Tiffany Mimms opined the claimant has marked to extreme limitations in the ability to interact and relate to supervisors, co-workers, and to withstand stress and pressure of a working day; that she has marked limitations in the ability to understand, remember and carry out detailed and complex tasks, deal with the public, sustain concentration and attention in two hour increments; and mild limitations in the ability to handle funds.

(Tr. at 38.)

The ALJ, however, afforded the opinions of these two treating physicians "little weight," asserting that they were "unsupported by the records" showing that plaintiff did not present "any abnormality of thought and behavior," at physical examinations, and "by their own records." (Id.) In this regard, the ALJ found that the opinions "to a great degree appear to be based on the claimant's report of symptoms . . . ." (Id.)

That plaintiff did not display abnormal thoughts and/or behavior at physical examinations, or that physicians concerned primarily with plaintiff's physical impairments did not perceive her mental impairments, is not a legitimate reason for rejecting the opinions of two treating physicians. This is especially so when those opinions are rendered by two specialists, are consistent with each other, and with the record. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)) ("opinion of a specialist about medical

---

[5] Plaintiff's motion also addresses the ALJ's treatment of the opinion of Dr. Jothi Murali, but concludes that the ALJ's rejection of the opinion "is of limited relevance." (Pl.'s MSJ (ECF No. 17) at 31.) As such, the court will not address that argument.

issues related to his or her area of specialty'" should be given greater weight).

In this regard, on April 27, 2011, plaintiff began seeing Dr. Mimms for individual therapy. (Id. at 1080.) Dr. Mimms diagnosed plaintiff as suffering from bipolar II disorder, with a Global Assessment of Functioning ("GAF") score of 58.[6] (Id. 1082.) Dr. Mimms treated plaintiff on a weekly basis for over three years prior to rendering her July 2014 opinion. (Id. at 910-1079.) Dr. Mimms' treatment notes reflect that plaintiff's symptoms included, but were not limited to, an anxiety attack (id. at 911), depressed mood (id. at 920), rapid thought (id. at 922), "flight of ideas" (id. at 924), trouble sleeping (id. at 929), limited insight (id. at 930), "significant anxiety" (id. at 931), labile affect (id. at 936), constricted affect (id. at 958), and angry and irritable mood.[7] (Id. at 974.)

Plaintiff began treatment with Dr. Hall on December 11, 2013. (Tr. at 1145.) Dr. Hall diagnosed plaintiff as suffering from bipolar disorder unspecified and prescribed lithium. (Id. at 1146.) Dr. Hall treated plaintiff again on January 22, 2014. (Id. at 1143.) Dr. Hall diagnosed plaintiff as suffering from bipolar disorder unspecified and posttraumatic stress disorder. (Id.)

Dr. Hall referred plaintiff to Dr. Karl Lanocha for TMS therapy. (Id. at 1137.) Dr. Lanocha determined that plaintiff's condition was appropriate for TMS therapy, in part, because plaintiff had "a confirmed diagnosis of depressive disorder," and her "score of the PHQ-9 indicated the presence of severe symptoms." (Id. at 1140.) Dr. Lanocha stated that Dr. Hall

---

[6] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.'" Tagger v. Astrue, 536 F. Supp.2d 1170, 1173 n. 6 (C.D. Cal. 2008) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 34). Moreover, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison, 759 F.3d at 1003.

[7] With regard to the treating physicians' treatment notes, it should be acknowledged that "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations." Orn, 495 F.3d at 634.

would "continue to be responsible for [plaintiff's] medication," and that Dr. Lanocha would coordinate his "efforts with Dr. Hall and [plaintiff's] psychotherapist." (Id. at 1141.) Thereafter, plaintiff regularly saw Dr. Hall and Dr. Lanocha for diagnosis and treatment. (Id. at 1117-36.)

While plaintiff's symptoms may have waxed and waned over the course of her treatment with Dr. Mimms, Dr. Hall, and Dr. Lanocha,

> [c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014); see also Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.").

For the reasons stated above, the court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Dr. Mimms and Dr. Hall.

**D.     Dr. Robert Morgan**

Plaintiff was examined by Dr. Morgan on September 2, 2014. (Tr. at 1437-50.) The ALJ's decision recounted Dr. Morgan's opinion but afforded it little weight. (Id. at 39.) Plaintiff argues that the ALJ improperly rejected Dr. Morgan's opinion because it was "a one-time evaluation, but relied on the opinions of state agency" nonexamining physicians. (Pl.'s MSJ (ECF No. 17) at 34.) Plaintiff's argument is well taken. If the ALJ could reject an opinion because it was based on a single examination, almost every examining opinion could be rejected for this reason.

However, the ALJ's decision also rejected Dr. Morgan's opinion because it was based on medical records which were "not part of this case—specifically comprehensive evaluations by Dr.

11

Robert Allen, Dr. Guy Washington, and Dr. Stephen Raffle." (Tr. at 39.) Moreover, the ALJ noted that Dr. Morgan "did not have access to the full medical record of the claimant's treatment in this case." (Id.) That finding is supported by Dr. Morgan's opinion. (Id. at 1437.)

For the reasons stated above, the court finds that the ALJ offered specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Morgan's opinion.

Accordingly, plaintiff is entitled to summary judgment on her claim that the ALJ's treatment of the medical opinions of Dr. Varughese, Dr. Mimms, and Dr. Hall constituted error.[8] Plaintiff is not entitled to summary judgment with respect to the ALJ's treatment of the opinions of Dr. Hu and Dr. Morgan.

## II. Lay Testimony

Plaintiff also argues that the ALJ's treatment of plaintiff's testimony and the testimony of her husband constituted error. (Pl.'s MSJ (ECF No. 17) at 35-39.)

### A. Plaintiff's Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

---

[8] The ALJ also rejected the opinions of Dr. Varughese, Dr. Hall, and Dr. Hu with respect to the ultimate issue of disability finding that "[t]he determination of disability is an issue reserved to the Commissioner and hence these findings cannot be given weight or special significance . . . ." (Tr. at 39.) However, "an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014).

12

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible for the reasons explained in this decision." (Tr. at 31.) The ALJ's decision then provided a lengthy discussion of four reasons supporting the ALJ's finding, (id. at 31-36), before summarizing:

> . . . while the record shows she may experience some level of weakness, pain, fatigue and psychiatric symptoms, the weight of the evidence demonstrates her allegations are out of proportion to the objective medical findings and diagnostic testing and imagery; that her symptoms are so well controlled by the conservative and surgical treatment given that she can still perform a wide range of sedentary unskilled exertional work; and the medical opinions support her capacity to engage in such work activity. Her activities of daily living as well as her return to working activity also support this finding.

13

(Id. at 36.)

The ALJ's analysis, however, is flawed in several respects. First, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of" the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue.").

Second, the Ninth Circuit has

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). And because the ALJ erroneously rejected the opinion of three treating physicians, the ALJ's assertion that plaintiff's symptoms were "so well controlled by the conservative and surgical treatment given," and that "the medical opinions support her capacity to engage in such work activity," was erroneous. (Tr. at 36.)

Moreover, plaintiff's treatment appears to have been far from conservative. Her mental health treatment included psychotropic medication, regular counseling sessions, and TMS therapy.[9] See Drawn v. Colvin, Case No. CV 15-3787 BRO (KES), 2016 WL 2621296, at *9 (C.D. Cal. Mar. 24, 2016) ("However, courts specifically have recognized that psychotropic medications . . . indicate mental health treatment which is not 'conservative' within the meaning of social security disability."); Sandberg v. Commissioner of the Social Sec. Admin., No. 3:14-cv-0810 ST, 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine such as Lithium is certainly not conservative in the same manner as over-the-counter pain relievers.").

---

[9] Plaintiff considered electroconvulsive therapy "but declined due to concerns about the possible need for hospitalization, repeated general anesthesia, and cognitive side effects from the treatment itself." (Tr. at 1137.)

14

Her physical treatment included physical therapy, injections of Lidocaine, Toradol, cortisone, a cervical collar and knee brace, Transcutaneous Electrical Nerve Stimulation, a cervical discectomy, corpectomy and instrumented fusion with plate fixation, and right knee surgery. (Tr. at 477, 573, 583, 615, 631, 637, 1474, 1528.)  "Surgery is not conservative treatment." Sanchez v. Colvin, No. CV 12-4061-SP, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013); see also Lapeirre-Gutt v. Astrue, 382 Fed. Appx. 662, 664 (9th Cir. 2010) ("Even assuming Lapeirre-Gutt's regimen of powerful pain medications and injections can constitute 'conservative treatment,' . . . it is untrue that Lapeirre-Gutt's treatment has been so limited. Lapeirre–Gutt underwent cervical fusion surgery in May 2004 in an attempt to relieve her pain symptoms."); Harrell v. Colvin, No. 1:13-cv-1352 JLT, 2015 WL 65558, at *12 (E.D. Cal. Jan. 5, 2015) ("Similarly, here Plaintiff was treated with narcotic medication and corticosteroid injections.  Further, Plaintiff testified that his doctor recommended fusion surgery, pending approval by Workman's Comp.  Therefore, Plaintiff has not received treatment that is entirely conservative in nature."); Samaniego v. Astrue, No. EDCV 11-865 JC, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27, 2012) (treatment not conservative when claimant treated "on a continuing basis" with steroid and anesthetic "trigger point injections," occasional epidural injections, and narcotic medication and doctor recommended "significant invasive surgery").

Finally, with respect to the ALJ's reference to plaintiff's "activities of daily living as well as her return to working activity," the ALJ's decision fails to cite to any specific evidence in support of this finding.[10] (Tr. at 36.)  Nonetheless,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other

---

[10] Plaintiff testified at the December 2, 2014 administrative hearing that she attempted to return to work on three occasions.  In 2012, that attempt lasted "one day" due to feeling "overwhelmed" and having "a panic attack." (Tr. at 105.)  In 2013, she worked "maybe three days" per week for six months providing therapy. (Id. at 107.)  She stopped because she "was depressed," had "a hard time getting [to] bed and getting there timely . . . struggling with over sharing . . . crying during sessions . . . struggling with maintaining accurate paperwork and billing files." (Id. at 109.)  Thereafter, in November of 2013, she was hired to administer IQ tests. (Id.)  She "had a panic attack and became overwhelmed" on her first day. (Id. at 111.)  She resigned a week later. (Id.)

15

> persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

Accordingly, the ALJ failed to offer specific, clear, and convincing reasons for rejecting plaintiff's testimony.

### B. Plaintiff's Husband's Testimony

The ALJ's decision considered the Third Party Adult Function report submitted by plaintiff's husband. (Tr. at 37.) The ALJ, however, accorded the opinion "no weight as it is not an opinion from an acceptable medical source," after finding that plaintiff's husband was "not found fully credible for reasons similar to those" given for rejecting plaintiff's testimony. (Id.)

However, the testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

////

Here, as explained above, the ALJ erred in rejecting plaintiff's testimony. Therefore, the reasons given for rejecting plaintiff's testimony cannot serve as germane reasons for rejecting the statement of plaintiff's husband. Nor can the fact that plaintiff's husband is not an acceptable medical source, as lay testimony is by definition testimony from a non-medical source. Accordingly, the court finds that the ALJ failed to offer a germane reason for rejecting the testimony of plaintiff's husband.

For the reasons stated above, the court finds that plaintiff is entitled to summary judgment on her claim that the ALJ's treatment of the subjective testimony constituted error.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, although it is clear that the ALJ committed numerous errors, that ALJ's residual functional capacity determination was inconsistent with the evidence of record, and that Dr. Varughese found plaintiff unable to work from September of 2013 to August 27, 2014, it is not

clear if plaintiff was disabled prior to this period, or for how long plaintiff remained unable to work after Dr. Varughese rendered his opinion on August 27, 2014. Accordingly, the court cannot say that further administrative proceedings would serve no useful purpose.

This matter will, therefore, be remanded for further proceedings consistent with this order. On remand, the ALJ shall either credit the opinions and testimony of Dr. Varughese, Dr. Mimms, Dr. Hall, plaintiff, and her husband as true, or provide legally valid reasons for any portion of that evidence that is rejected.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;
2. Defendant's cross-motion for summary judgment (ECF No. 19) is denied;
3. The Commissioner's decision is reversed;
4. This matter is remanded for further proceedings consistent with this order; and
5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 13, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\barrino1841.ord